CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE VA. - FILED

NOV 0 5 2008

JOHN F. CORCORAN, CLERK
BY: /s/ /DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| KELVIN D. HUDSON, | ) |
| | ) Civil Action No. 7:07cv00585 |
| Plaintiff, | ) |
| | ) **MEMORANDUM OPINION** |
| | ) |
| KATHLEEN BASSETT, et al., | ) By: Hon. James C. Turk |
| | ) Senior United States District Judge |
| Defendants. | ) |

Plaintiff Kelvin D. Hudson ("Hudson"), a Virginia inmate proceeding pro se, brings this action under the Civil Rights Act, 42 U.S.C. § 1983, alleging that Defendants Kathleen J. Bassett, Kevin Pickerel, Mary Gilbert, Donna Davis, R. Sandifer, and Fred Shilling failed to provide him with adequate dental care during his incarceration at Keen Mountain Correctional Center ("KMCC") (Docket No. 1). Hudson seeks $50,000.00 in monetary compensation, $10,000.00 in punitive damages, and injunctive relief in the form of immediate dental treatment at no cost and the employment of a full-time dentist at KMCC. Defendants filed Motions for Summary Judgment (Docket No.'s 22 & 27) to which Hudson filed timely responses (Docket No.'s 31, 37, & 39), thereby making the matter ripe for disposition. For the reasons that follow, Defendants Bassett, Schilling, Pickerel, and Sandifer's Motion for Summary Judgment will be granted. Defendant Gilbert and Davis's Motion for Summary Judgment will also be granted.[1]

I.

To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that such

---

[1] Defendants Gilbert and Davis have also filed a Motion to Dismiss (Docket No. 14) arguing that certain claims brought by Hudson are barred by statute of limitations. As this memorandum opinion and accompanying order disposes of Hudson's § 1983 claims in their entirety, and because Hudson refined his allegations to complain only about denial of dental care during or after September 2006, the court will deny the Motion to Dismiss as moot.

deprivation is a result of conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). Section 1983 "is not itself a source of substantive rights," but instead is "a method for vindicating federal rights elsewhere conferred." Baker v. McCollan, 443 U.S. 137, 144 (1979).

## II.

Hudson names Kathleen J. Bassett, KMCC Warden, Kevin Pickerel, KMCC Assistant Warden, Mary Gilbert, KMCC Head Staff Nurse, Donna Davis, Regional Dental Hygienist for the Virginia Department of Corrections ("VDOC"), R. Sandifer, KMCC Grievance Coordinator, and Fred Schilling, Director of Health Services for VDOC, as Defendants in this matter. Hudson alleges the following sequence of events from which his claims arise:

On September 13, 2005, Hudson was transferred from Wallen's Ridge State Prison to KMCC. Shortly after his arrival, Hudson submitted a request to be seen by a dentist. Hudson's request was subsequently returned, signed by Defendant Gilbert, notifying Hudson that his name had been added to the list of inmates waiting to see a dentist. (Compl. at 1.)

On July 31, 2006, Hudson had yet to be seen by a dentist. Hudson therefore submitted a second request to Gilbert, this time noting that one of the open-faced gold crowns on his teeth had become loose and needed to be re-cemented. (Compl. at 2.) Hudson also complained about discomfort and problems eating certain foods. (Compl. at 2.) Gilbert responded to this request on August 2, 2006, stating again that Hudson was on the dentist waiting list. (Compl. at 2.)

On August 21, 2006, Hudson submitted an emergency dental request and was evaluated by Defendant Davis, a dental hygienist performing triage at the prison. (Compl. at 3.) Hudson complained to Davis that one of his crowns had become loose, but Davis concluded that

2

Hudson's underlying tooth was healthy and thus the condition was neither urgent nor an emergency. (Compl. at 3.) As a consequence, Davis took no further action at that time.

On February 12, 2007, Hudson filed another emergency dental form and was seen, again, by Davis. (Compl. at 7.) This time, Hudson informed Davis that both the previously-mentioned gold crown and a temporary filling had become dislodged from his teeth. (Compl. at 7.) Davis also recorded evidence of a possible cavity. (Compl. at 7.) Davis took no further corrective action, however, and she informed Hudson that he should continue waiting until he could be seen by a dentist to get the necessary dental work done. (Compl. at 7.)

During this same time period, particularly September 10, 2006 through January 10, 2007, Hudson submitted a series of Informal Complaints ("Complaint" or "Complaints") concerning a purported lack of dental care at KMCC and its effects on him. (Compl. at 5.). These Complaints were routed by Defendant Sandifer to Nurse Gilbert. (Compl. at 5.) Hudson also directly contacted Gilbert during this time period to complain further about the delay in seeing a dentist. (Compl. at 4.) To each of these communications, Gilbert responded by stating that Hudson remained on the waiting list for the dentist, but should his condition worsen, he should "report to sick-call and complete [an] emergency dental form." (Compl. at 5-6.)

Unsatisfied, Hudson submitted a Regular Grievance ("Grievance") to KMCC officials on January 25, 2007, complaining of "longstanding and continual denial of dental treatment." (Compl. at 8.) The Grievance, much like Hudson's Informal Complaints, was first routed to Sandifer, but she refused to process it due to its reference to events occurring more than 30 days prior to the filing date.[2] (Compl. at 8.) Sandifer returned the grievance to Hudson with explicit

---

[2] According to VDOC Policy No. 866-7.14 ("Initiation of Regular Grievance Procedure"), "[g]rievances are to be submitted within 30 calendar days from the date of occurrence/incident or discovery of the occurrence/incident,

3

instruction for its resubmission, particularly that Hudson could reference only his most recent informal complaint, dated January 10, 2007. (Compl. at 8.) Hudson now claims that this "was not a valid reason to deny intake." (Compl. at 8.) Nevertheless, Hudson filed a second Grievance on February 21, 2007, which was properly received by Sandifer for investigation and resolution.[3] (Compl. at 9.)

On March, 13, 2007, Hudson received a response to the second Grievance[4] deeming his documented complaints to be "UNFOUNDED" according to VDOC policies. (Compl. at Exhibits, "Inmate Grievance Response Form," marked as received March 13, 2007.) As justification for this ruling, the response stated that Hudson had been seen by a dental hygienist, his condition was non-emergent, and he remained on the waiting list to see a dentist and would be seen in the order his name was received. (Compl. at Exhibits, "Inmate Grievance Response Form," marked as received March 13, 2007.) The response further stated that if Hudson's condition ever became an emergency, he should report to the medical department to receive palliative treatment until an emergency appointment could be scheduled with a dentist. (Compl. at Exhibits, "Inmate Grievance Response Form," marked as received March 13, 2007.)

---

except in instances: 1) beyond the inmate's control, or 2) where a more restrictive time frame has been established in Division Operating Procedures to prevent loss of remedy or the issue from becoming moot."

[3] Hudson had filed an Informal Complaint on February 13, 2007, prior to the filing of his second Regular Grievance. (Compl. at 9.) In that Informal Complaint, Hudson again expressed concern about the lack of dental care at KMCC and the possibility that he would soon loose his teeth due to decay. (Compl. at 9.) Gilbert responded that Hudson remained on the list to see a dentist and that Hudson's issues were non-emergencies. (Compl. at 9.)

Hudson also filed a subsequent Informal Complaint on March 7, 2007, claiming that he was suffering from a "very serious deprivation of his dental needs," that he was being "neglected" and "misdiagnosed as not an emergency," and that the "extraction only" policy purportedly employed at KMCC constituted an "outright denial of dental care." (Compl. at 12.)

Finally, on March 14, 2007, Hudson purportedly confronted Defendant Bassett while on the recreation yard. During this meeting, Hudson claims to have explained his efforts to receive dental care and the pain he was experiencing as a result of being denied treatment. Hudson also claims that Defendant Bassett "took down Hudson's information, stating she would address the issue." (Compl. at 16.)

[4] The response was signed by "K.J. Bassett."

4

Hudson appealed this response pursuant to VDOC policies to Defendant Shilling, Director of Health Service for the VDOC.[5] (Compl. at 15.) Hudson claimed in this appeal that he was being denied basic preventative dental treatment in violation of VDOC policies and that his dental health was deteriorating as a result. (Compl. at 15.) Hudson further claimed that KMCC staff purposely neglected prisoner dental requests until the health of the prisoners worsened to an emergency and the only remaining option was to extract the problematic teeth.[6] (Compl. at Exhibits, "Inmate Grievance Response Form," marked as received March 13, 2007.) Finally, Hudson provided documentation of his efforts to resolve these matters informally. (Compl. at Exhibits, "Inmate Grievance Response Form," marked as received March 13, 2007.) On April 5, 2007, however, Shilling denied Hudson's appeal as "unfounded," stating "[t]here has been no deliberate delay in providing dental treatment . . . [and] no violation of policy." (Compl. at Exhibits, "Inmate Grievance Response Form, Level II," dated April 5, 2007.)

In his § 1983 Complaint, Hudson now claims that this long series of events demonstrates a deliberate indifference by the Defendants to his "serious medical needs." (Compl. at 32.) On account of that purposeful indifference, Hudson argues that Defendants violated his Eighth Amendment rights. (Compl. at 32.) Hudson contends that particular constitutional violations occurred when Defendants failed to respond "timely" to his requests for dental treatment, upheld an "extraction only" policy, did not employ a full-time dentist at KMCC, and took no action to ensure "adequate dental care" for inmates even after Hudson made them aware of the significant delays. (Compl. at 32.) Hudson also claims that these violations led him to live in "severe pain" and that he "lost significant weight as a result." (Compl. at 32.)

---

[5] Hudson filed his appeal timely on March 14, 2007. (Compl. at Exhibits, "Inmate Grievance Response Form," marked as received March 13, 2007).

[6] Hudson refers to this purportedly unofficial policy as KMCC's "Extraction Only" policy. (See e.g., Compl. at 20.)

5

In response, Defendants Bassett, Schilling, Pickerel, and Sandifer contend that Hudson has failed to exhaust his administrative remedies. Defendants therefore claim an affirmative defense pursuant to Section 1997e(a) of the Prison Litigation Reform Act ("PLRA"). Defendants Bassett, Schilling, Pickerel, and Sandifer also argue that Hudson's court filings fail to demonstrate a deliberate indifference to a serious medical need, and even if such a showing was made, they are nonetheless entitled to qualified immunity. In separate filings, Defendants Gilbert and Davis raise similar defenses, particularly that there was no deliberate indifference to a serious medical need, and even if there was, they are entitled to qualified immunity.

## III.

In order to state a cognizable claim for denial of medical care under the Eighth Amendment, a plaintiff must allege facts sufficient to demonstrate a deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 104 (1976). Thus, both an objective and a subjective component are needed. See Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) ("In order to make out a prima facie case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.'"). A medical need serious enough to give rise to a constitutional claim involves a condition that places the inmate at a substantial risk of serious harm, usually loss of life or permanent disability, or a condition for which lack of treatment perpetuates severe pain. See Farmer v. Brennan, 511 U.S. 825, 832-35 (1994); Sosebee v. Murphy, 797 F.2d 179, 182-83 (4th Cir. 1986); Loe v. Armistead, 582 F.2d 1291, 1296-97 (4th Cir. 1978). To establish deliberate indifference, a plaintiff must present facts to evince that the defendants had actual knowledge of and disregard for an objectively serious

medical need. Rish v. Johnson, 131 F.2d 1092, 1096 (4th Cir. 1997). Questions of medical judgment are not subject to judicial review. Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975). A claim regarding a disagreement between an inmate and medical personnel over diagnosis or course of treatment and allegations of malpractice or negligence in treatment do not state cognizable constitutional claims under the Eighth Amendment. Miltier v. Beorn, 896 F.2d 848, 851-52 (4th Cir. 1990); Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Estelle, 429 U.S. at 105-06.

To bring a constitutional claim against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with a prison doctor's treatment, or tacitly authorized or were indifferent to the prison physician's misconduct. Miltier, 896 F.2d at 854. Supervisory prison officials are entitled to rely on the professional judgment of trained medical personnel. Id. Furthermore, a defendant who occupies a supervisory position may not be held liable under a theory of respondeat superior in a § 1983 action. Monell v. Dep't of Soc. Serv., 436 U.S. 658, 690-92 (1978); Ross v. Reed, 719 F.2d 689, 698 (4th Cir. 1983) (finding that respondeat superior liability has no place in § 1983 jurisprudence).

## A. Exhaustion of Administrative Remedies

As an initial matter, Section 1997(e) of the Prison Litigation Reform Act of 1955 ("PLRA") requires a prisoner to fully exhaust all available administrative remedies before filing a 42 U.S.C. § 1983 action regarding prison conditions. In particular, Section 1997(e) states:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

7

42 U.S.C. § 1997e(a) (2008). This statutory obligation is mandatory regardless of the remedy sought, Booth v. Churner, 532 U.S. 731, 741 (2001), and courts have no discretion to excuse noncompliance in actions to which the PLRA applies. Porter v. Nussle, 534 U.S. 516, 524 (2002). As rationale for such a rigid prerequisite, the United States Supreme Court has stated that the PLRA "attempts to eliminate unwarranted federal-court interference with the administration of prisons, and . . . "affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006) (quoting Porter, 534 U.S. at 525).

To satisfy the PLRA's exhaustion requirement, a prisoner must "properly exhaust" all administrative remedies available. Woodford, 548 U.S. at 93. Proper exhaustion has been defined as "complet[ing] the administrative review process in accordance with the applicable procedural rules, including deadlines." Id. at 88. Proper exhaustion, therefore, requires a prisoner to carry out the administrative grievance process in its entirety, including appealing any denial of relief through any appellate levels of review that are available. See Booth v. Churner, 532 U.S. 731, 738-41 (2001); see also Woodford, 548 U.S. at 105 (Stevens, J., dissenting) (the PLRA mandates that prisoners "file an administrative grievance and, if the resolution of that grievance is unsatisfactory to them, they must exhaust available administrative appeals").

In the instant case, the court finds that the only claims properly exhausted pursuant to the PLRA relate to Hudson's Informal Complaint dated February 13, 2007, and corresponding Regular Grievance dated February 21, 2007. Hudson properly brought these claims according to VDOC policy and timely appealed them to the KMCC Warden (Level I) and then to the VDOC Regional Health Services Director (Level II). As stated in the VDOC's Level II response,

8

Hudson reached the "last level of appeal for [the] complaint" at that time, and thus the claims were properly exhausted.

Hudson's remaining Informal Complaints (dated September 10, 2006, November 8, 2006, January 10, 2007, and March 7, 2007) and Regular Grievances (dated January 25, 2007, February 13, 2007 and March 20, 2007) did not comply with the 30-day limitation set forth in VDOC Policy No. 866-7.14. KMCC officials consequently dismissed these reports as moot, thus preventing Hudson from completing the administrative review process in its entirety. Accordingly, because the Defendants have not waived the exhaustion requirement, see Anderson v. XYZ Corr. Health Services, Inc., 407 F.3d 674 (4th Cir. 2005), the court may not consider these claims.

## B. Defendants Bassett, Schilling, Pickerel, and Sandifer

Turning next to the limited set of claims remaining within the court's purview, the court finds that Hudson fails to state a claim for deliberate indifference against Defendants Bassett, Schilling, Pickerel, and Sandifer. There is no indication that these non-medical personnel were personally involved with Hudson's denial of treatment. See Miltier, 896 F.2d at 854. Nor is there any evidence that these Defendants interfered with Hudson's eventual dental treatment or that they tacitly authorized grossly incompetent treatment. See Id. On the contrary, while KMCC and VDOC officials actively sought a qualified candidate to fill KMCC's vacant full-time dentist position,[7] these supervisory personnel took steps to ensure that substitute dental care and treatment was available to Hudson and all of his fellow inmates.

---

[7] According to an affidavit filed by Dr. George A. Smith, Chief Dentist for the Virginia Department of Corrections, the dentist assigned to KMCC resigned in May, 2006. From that date until January, 2008, KMCC did not employ a dentist on-site. During this time period, however, KMCC continuously advertised the vacancy in statewide newspapers and posted it on the VDOC recruitment listings. The VDOC was nevertheless unable to hire a qualified candidate at all times relevant to this suit.

9

For example, during the time period when KMCC was unable to employ a full-time dentist, KMCC officials followed a policy under which inmates were initially evaluated by the Head Nurse, Defendant Gilbert, and then scheduled to see a dental hygienist, Defendant Davis.[8] The hygienist would assess the patients' complaints and place them on a waiting list to see a dentist based on type and severity of their treatment needs.[9] This treatment was provided by a community dentist, whose office was located approximately 20 minutes away from the prison facility. Due to the security concerns associated with moving high-security inmates, however, KMCC could only transport four to eight inmates to the community dentist each week. As there were approximately 900 maximum security inmates at KMCC, and every effort was made to prioritize the most serious dental needs first, the wait could be lengthy for routine matters. In the meantime, KMCC provided adequate palliative treatment to inmates to alleviate their minor pain.

As was documented in Hudson's Informal Complaint, dated February 13, 2007, and his subsequent Regular Grievance, dated February 21, 2007, Hudson was evaluated by Defendant Davis, the dental hygienist, on February 12, 2007. At that time, Hudson was already on the

---

[8] Defendant Davis, the Regional Dental Hygienist for VDOC, saw inmates at KMCC three days every other week.

[9] According to KMCC policy, there were three levels of priority for dental conditions at KMCC: Routine Dental Care, Urgent Dental Conditions, and Emergency Dental Treatment. These levels of priority are set by the Virginia Department of Corrections, Health Services Unit.

"Routine Dental Care" included the following types of procedures: fillings, extractions, root canals, temporary crowns and restorations. These types of procedures were considered to be of moderate priority and the inmate was placed on a waiting list to see the community dentist in the chronological order in which his request was received.

"Urgent Dental Conditions," while not life threatening, have high priority and require prompt attention due to extreme pain or need for immediate intervention to control or prevent the exacerbation of the conditions. These conditions include: severe, unrelenting toothaches, localized swelling from an abscessed tooth, and painful impacted wisdom teeth. These patients were given priority and placed to be seen the next available dental appointment. These patients jump ahead of other inmates who are on the list for routine dental care.

Finally, "Emergency Dental Treatment" is of the highest priority and is available on a 24-hour basis. These patients are not placed on a waiting list, but rather seen immediately and referred for outside care if necessary. This category includes patients with life threatening swelling, uncontrolled bleeding, severe traumatic injuries, and other conditions that, if not treated immediately, will result in a life threatening situation.

waiting list to see the community dentist to replace a loose crown. Davis noted Hudson's desire to have a cavity filled and a temporary filling replaced, but Davis diagnosed none of the needs as urgent or an emergency. Hudson therefore remained on the waiting list to see the community dentist, and Davis provided him sufficient amounts of ibuprofen to alleviate his pain.

When Hudson filed the Informal Complaint and Regular Grievance in question, Defendants Bassett, Pickerel, and Sandifer timely examined Hudson's medical records, determined that health care providers had assessed his condition and provided a course of treatment in accordance with KMCC's dental policy, and relied on the diagnosis of the KMCC medical personnel to determine the urgency of Hudson's complaints. Defendant Schilling similarly reviewed Hudson's records in determining that adequate dental care was available.[10] None of these supervisory Defendants possessed the medical expertise necessary to substitute their opinions for the opinions of KMCC's medical staff. See Meloy v. Bachmeier, 302 F.3d 845, 849 (8th Cir. 2002) ("Prison officials cannot substitute their judgment for a medical professional's prescription."). On the contrary, these Defendants were entitled to rely on the medical staff's judgment to identify inmates with emergency dental needs so they could be expedited past the waiting list for immediate treatment. See id. ("A prison's medical treatment director who lacks medical expertise cannot be liable for the medical staff's diagnostic decisions."), Miltier, 896 F.2d at 854 ("No record evidence suggests why the wardens should not have been entitled to rely upon their health care providers' expertise."). The KMCC medical personnel had diagnosed Hudson's condition as non-emergent, and there is no evidence to suggest that Defendants Bassett, Schilling, Pickerel, and/or Sandifer's actions (or VDOC's dental

---

[10] Although not named in this lawsuit, Chief Dentist for the VDOC, George A. Smith also investigated Hudson's claims and drafted the Level II response for Schilling's signature. According to Dr. Smith, a review of Hudson's medical records demonstrated that Hudson was already on the waiting list to see the community dentist for routine care, and there was no deliberate delay and providing his requested treatment.

11

policy) demonstrated anything but an attentiveness to the responsibility of ensuring that proper dental care was available to all inmates, including Hudson. For that reason, the court concludes that Hudson has failed to state a claim for deliberate indifference against Defendants Johnson, Schilling, and Bassett, and their Motion for Summary Judgment will accordingly be granted.

## C. Defendants Gilbert and Davis

The court also finds that Hudson fails to state a claim for deliberate indifference against Defendants Gilbert and Davis. In coming to this conclusion, the court first notes that dental care is unquestionably "one of the most important medical needs of inmates." Ramos v. Lamm, 639 F.2d 559, 576 (10th Cir. 1980); see also Large v. Washington Co. Detention Ctr., 915 F.2d 1564 (Table) (4th Cir. 1990) (finding that there is ample authority recognizing that the failure to provide comparable basic corrective/medical devices such as hearing aids, eyeglasses, or dentures may amount to deliberate indifference to a serious medical need). As the Second Circuit has noted, however, "a correctional facility is not a health spa, but a prison in which convicted felons are incarcerated. Common experience indicates that the great majority of . . . prisoners would not in freedom or on parole enjoy the excellence in dental care which the plaintiffs understandably seek on their behalf." Dean v. Coughlin, 804 F.2d 207, 215 (2d Cir. 1986). This court is governed by the principle that the objective is to "provide the minimum level of [dental] care required by the Constitution." Ruiz v. Estelle, 679 F.2d 1115, 1150 (5th Cir.), vacated in part as moot, 688 F.2d 266 (5th Cir. 1982), cert. denied, 460 U.S. 1042 (1983). "[T]he essential test is one of medical necessity and not one simply of desirability." Woodall v. Foti, 648 F.2d 268, 272 (5th Cir. 1981) (citations omitted).

Applying these principles to the instant case, the court finds that Hudson has failed to make a showing that Defendants Gilbert and/or Davis violated his constitutional rights. Hudson suffered from two dental concerns while incarcerated at KMCC: (1) a tooth missing an aesthetic crown (previously referred to in court filings as "tooth #8") and (2) a second tooth with a broken temporary filling and possible cavity (previously referred to as "tooth #12"). Hudson first complained about tooth #8 on August 2, 2006, and Defendant Davis examined him on August 21, 2006. Davis determined at that time that Hudson's condition was neither urgent nor an emergency, and thus Davis ensured that Hudson was on a list to see the dentist. Similarly, Hudson first complained about tooth #12 on February 12, 2007, and Davis examined him on the very same day. Davis again determined that Hudson's condition remained of moderate severity.

Hudson now offers no evidence that these medical evaluations were incorrect in their diagnoses or assigned priority for treatment under KMCC policies. Hudson also fails to offer any evidence that he suffered trauma, swelling, excessive bleeding, infection, or unrelenting or severe pain as a result of his dental conditions. At most, the evidence proves that Hudson endured discomfort and sensitivity to hot and cold, and he was unfortunately unable to see the community dentist before transferring to another facility. These allegations are wholly insufficient to prove that Hudson's condition was ignored by KMCC medical staff or that his needs should have been elevated above other inmates who were also waiting to see the community dentist. The lengthy delay caused by the urgent and emergent needs of other inmates did not constitute deliberate indifference on behalf of the medical staff at KMCC—Defendants Gilbert and Davis in particular—and it appears that Hudson was evaluated and treated exactly as prescribed under KMCC dental policies. This court previously declared those policies to be

13

constitutional under other circumstances, see McCauley v. Johnson, 2007 U.S. Dist. LEXIS 68505 (W.Va. 2007), and there is insufficient evidence to find differently here.[11] For these reasons, the court concludes that Defendants Gilbert and Davis' Motion for Summary Judgment will also be granted.

## IV.

In conclusion, taking Hudson's allegations in the light most favorable to him, the court finds that they are insufficient to state possible claims under 42 U.S.C. § 1983. Accordingly, for the reasons set forth above, it is hereby **ORDERED** that Defendants Bassett, Schilling, Pickerel, and Sandifer's Motion for Summary Judgment (Docket No. 22) is **GRANTED**. Defendants Gilbert and Davis's Motion for Summary Judgment (Docket No. 27) is also **GRANTED** and their Motion to Dismiss (Docket No. 14) is **DENIED** as moot. An appropriate Order will issue this day, and the Clerk of Court is directed to send a copy of this Memorandum Opinion and accompanying Final Order to Plaintiff and counsel of record for all Defendants.

**ENTER**: This 5th day of November, 2008.

Hon. James C. Turk
Senior United States District Judge

---

[11] As previously mentioned, Hudson also alleges in his § 1983 Complaint that KMCC staff employed an "extraction only" policy under which KMCC medical personnel purposefully delayed recommending and/or providing preventative or reconstructive dental treatment until an inmate agreed to have the problematic teeth extracted. The court notes, however, that Hudson has offered no evidence to support this claim. Furthermore, an "extraction only" policy runs contrary to terms and goals of VDOC Division Operating Procedure (DOP) 716 (superseded by DOP 720.6), governing the procedures for providing dental care to incarcerated offenders.

14